PHILLIPS *v.* GRAND TRUNK WESTERN
RAILROAD COMPANY.

·1. Evidence—Hearsay—Conclusion.

Reception in evidence of testimony by railroad detective and
other witnesses that railroad company's clock was inaccurate
and known to be so in determining time of accident *held,* not
prejudicial error, where such statement was supported by
the testimony of 1 witness who had checked the clock by his
own wrist watch and found the clock inaccurate, and it
was also corroborated by another witness.

2. Trial—Failure to Call Witness—Presumption—Request to
Charge—Instructions.

Omission to give plaintiffs' request to charge that jury should
not indulge in presumption that plaintiffs' failure to call
witnesses to the stand meant they would testify adversely to
him, since either side could have called them *held,* not re-
versible error, where trial court did instruct jury that it should
determine the case on the basis of the testimony heard and
should not speculate on why witnesses were not here, such
request to charge and charge given having been made following
incident at close of plaintiffs' proofs when their counsel an-
nounced that he had 3 more boys who were at or near the scene
of the accident who were available should defendant care to
call them and trial court told jury, at defendant's request,
to disregard such announcement.

3. Jury—Voir Dire—Bias.

Trial court's refusal to put question on *voir dire* examination
of members of jury panel in precise language of plaintiffs'
counsel, namely, "whether or not they have any prejudice

References for Points in Headnotes

[1]  20 Am Jur, Evidence § 450 *et seq.*
[2]  53 Am Jur, Trial § 695.
[3]  31 Am Jur, Jury § 136 *et seq.*
[4]  53 Am Jur, Trial § 81,

against this boy because of his color" *held,* not error, where questions put to jury completely covered matter of color and other potential bias or antipathy that might be involved.

4. Railroads—Evidence—Comments of Court—Instructions.

Reversible error *held,* not to have been committed in trial court's comments relative to inability of an engineer, involved in railroad accident in which plaintiff, a 13-year-old boy, lost his legs, to recollect certain details of operation of the engine some 3-1/2 years theretofore, or as to court's instructions wherein jury was told to disregard what it may have observed about some reaction by the court with respect to testimony, where it does not appear that the court's comments indicated the court believed the witness or that the jury should do so and instructions clarified the situation.

Appeal from Wayne; Sullivan (Joseph A.), J. Submitted November 5, 1964. (Calendar Nos. 62, 63; Docket Nos. 49,928, 49,929.) Decided April 9, 1965.

Declarations by Johnnie Phillips and Maggie Phillips, his guardian, against Grand Trunk Western Railroad Company, a Michigan corporation, for injuries resulting from plaintiff's fall beneath the wheels of a moving train on June 20, 1958. Verdict and judgment for defendant. Plaintiffs appeal. Affirmed.

*Gussin, Weinstein & Kroll (William J. Weinstein,* of counsel), for plaintiffs.

*Robert L. Livesay,* for defendant.

Dethmers, J. These are actions of a mother and son, consolidated for trial and appeal, for the son's personal injuries and resulting damages to both. From jury verdict of no cause for action and judgment thereon for defendant, the plaintiffs appeal.

Plaintiff son, a 13-year-old boy, hereinafter called the plaintiff, with other boys, went onto the property of defendant railroad company. They climbed up the side of a standing freight train. When plaintiff reached the top of a boxcar, it jerked. He looked ahead and saw an engine connected to the train. He testified, on trial, that a man in the window of the engine was looking back his way and waving his arms. Plaintiff became frightened and began to go down the ladder on the car. As he did so, the train started to move forward. While he descended the ladder the train's speed increased. When he reached the bottom rung of the ladder he pushed himself backward from the car and fell to the ground. The wheels of the train severed both of his legs. For resulting injuries and damages these suits were brought.

Counsel for plaintiff, in his opening statement, conceded that plaintiff was a trespasser on defendant's property, but with respect to that and defendant's expressly pleaded defense that plaintiff was guilty of negligence which was a proximate cause of his injuries, he stated that plaintiff's theory in the case was that defendant was guilty of subsequent, discovered negligence. This was based on plaintiff's contention that defendant's employees saw plaintiff and the other boys on its property and on the train but did nothing to prevent injury by stopping the train or causing them to get off, but, instead, speeded up and waved to them to jump off.

Defendant's employees denied having seen plaintiff or any of the boys or having had knowledge of their presence on the train. Plaintiff's counsel contended that they were falsifying under oath as witnesses. He deemed essential to his proof in that regard the time when a detective employed by defendant received a telephone call from a sergeant reporting the accident. The detective testified that

when he received that call in one of defendant's buildings a clock therein showed the time to be about 7 o'clock or a little later. Plaintiff's counsel considered that time element to constitute proof that defendant's employees knew about the accident earlier than the time they testified they had first learned of it when one of them saw a police car and people and a commotion back on the tracks at the scene of the accident. At trial the detective's testimony that the clock had never been known to be accurate and that it was not accurate was permitted to stand over plaintiff's objection that it was a conclusion. Also, he was permitted to testify that the clock had been removed a couple of months after the accident because "it was broke". This was objected to as being incompetent, irrelevant, and immaterial.

Plaintiff urges that prejudicial error resulted from allowing the indicated testimony about the clock. He condemns it as having been hearsay evidence upon which the conclusion of the witness was based. It is to be observed that the witnesses not only testified that the clock had never been known to be accurate, but, also, that one of them testified that he knew, from frequent checking with his own watch, that it was inaccurate. This amounts to more than either hearsay or conclusion. The inaccuracy of the clock was corroborated by another witness in testimony brought out by plaintiff on cross-examination. Furthermore, the testimony, stressed by plaintiff, of the employee of defendant to the effect that he received the telephone call around 7 o'clock or a little later, according to that clock, was qualified by his immediately succeeding testimony that he could not say for sure what time it was, but that it was 7 or 7:15 or 7:25, around 7. We see no prejudicial error in permitting the testimony as to the accuracy of the clock.

During the trial, witnesses who had not as yet testified were excluded from the courtroom by the

court. At the conclusion of plaintiff's proofs, his counsel announced, in the presence of the jury, that he had 3 of the boys who had been at or near the scene of the accident but whom he had not called to the stand as witnesses, in the hall just outside the courtroom and that they were available as witnesses if the defense desired to call them. At defendant's request, the court instructed the jury to disregard that announcement. Among plaintiff's subsequent requests to charge there was included one to the effect that there was no duty on plaintiff's part to call witnesses other than those he did call to the stand and that the jury should indulge no presumption that his failure to call them meant that they would have testified adversely to him because either side could have subpoenaed and called them. The request was not given word for word as plaintiff requested, but the court did instruct the jury as follows:

"During the course of the case there has been something said by counsel with respect to witnesses who did not appear. As we said at the outset in this case, you decide the case on the basis of the testimony that you hear in the case keeping in mind all the other rules that apply. You should not decide the case on what you think witnesses might have testified to had they been here, or you should not speculate on why witnesses were not here, but you should decide the case based on the testimony that you did hear from the witnesses who were here, and not upon any speculation or surmise."

Plaintiff cites and quotes from *Barringer* v. *Arnold,* 358 Mich 594, to the effect that no inference may be drawn against one of the parties from his failure to call a witness if the witness was equally available to the opposite party or if the evidence involved would be merely cumulative. It was held reversible error for the trial court to charge, as it did, that the

inference might be drawn. Here the situation is the reverse. The court did not so charge. The claim of error is that the court did not instruct against the drawing of such inference. *Barringer* is no authority for the right to such charge. Furthermore, if plaintiff was entitled to it, we think the quoted charge of the court, as given, was the equivalent of the request, and plaintiff received all to which he was entitled in this connection.

Plaintiff assigns error in the court's refusal, on *voir dire* examination of members of the jury panel, to put a question to them in the precise language requested by plaintiff's counsel, namely, "whether or not they have any prejudice against this boy because of his color". The court did, however, put this question to them:

"Do any of you feel, or do any of you entertain any feeling which, in your judgment, might or should disqualify you from consideration of this case because of any feeling of bias, prejudice or sympathy, and by that I mean, any feeling of bias or prejudice based upon your antipathy of any person because of race, color, creed, religious belief, or any antipathy or bias against the defendant because it is a railroad, or because it is a corporation?

"I take it then that all of you feel that you are qualified to objectively appraise the testimony in this case, decide the issues of fact based upon the testimony in the case, and the law as the court gives it to you, is that correct?

"And that you will return a verdict based upon that to the total exclusion of any bias, prejudice or sympathy in the case, is that correct?"

We think the question as put by the trial judge completely covered plaintiff's request and measured up fully to everything to which plaintiff was entitled in this connection.

During plaintiff's cross-examination of the man who had been the engineer of the train when the accident happened, the following occurred:

"*Q.* Now, when you got down into Avery yard, you do remember that your engine was uncoupled from the train, do you remember that?

"*A.* We stopped at Avery.

"*Q.* Yes.

"*A.* Well, I don't remember whether we uncoupled the engine from the train or held on to one car. I am not positive what the moves were there.

"*Q.* You do remember going down to Avery?

"*A.* We went into Avery, yes, sir.

"*Q.* Now, you say you're not sure whether or not you went in with one car or you didn't?

"*A.* I'm not positive what moves were at Avery at all.

"*Q.* Now, when you pulled into Avery, is it true that the engine stopped right along side the shanty on the main line in Avery yard without going into any of the switches?

"*A.* I couldn't tell you where it stopped.

"*Q.* Well, you were on the left-hand side, now?

"*A.* I know, but the engine stops maybe a thousand times a day, here and in different places.

"*Q.* I'm not interested in a thousand times, Mr. Wilson. I'm interested in this particular time, June 20, 1958.

"*The Court*: I'd like to say, counsel, I think everyone understands, including the witness, that the accident occurred about three and a half years ago. Now, if a witness says he does not recall and does not remember, that is his answer, and he cannot be required to recall or recollect if he can't recall.

"*Mr. Weinstein:* Will you read the last question?

"*The Court:* I'm referring to a line of questioning that has been developing here on both sides of the case, but you may read the last question."

(Whereupon the following question and answer were read by the reporter:

" '*Question:* Well, you were on the left-hand side, now.

" '*Answer:* I know, but the engine stops maybe a thousand times a day, here and in different places.')

"*The Court:* You see, counsel, the questions get into an argumentative category, and that is an additional reason for being objectionable. These are matters which you may argue to the jury if you wish, but I think the witness is here to give his testimony or his best recollection, and when he's done that he's really discharged his obligation, unless you feel he's not given his best recollection, and then you may pursue the matter based on something additional in the case.

"*Mr. Weinstein:* All right, sir."

Thereafter counsel for plaintiff, nonetheless, pursued the same type of questioning. Later, the court, in its instructions, told the jury:

"One other thing. During the course of the case you may observe or feel that you are observing some reaction by the court with respect to testimony or with respect to some statement made. You should put this entirely out of your mind. The court has no opinion in this case as to what the facts are. That is your job. That is what you decide, and anything, any statement or any conduct or any inflection or any change in countenance or anything of that nature which you may have observed, or thought you observed during the course of the trial, you should put entirely out of your mind because it has nothing to do with your job in finding the facts in the case. In other words, you are finding the facts based on the testimony, the witnesses that you believe, the exhibits and so on, and not upon any statement or reaction or inflection on the part of the court. * * *

"What I have said here about the realm of fact here, the court cannot assist you because you are supreme in that realm."

Plaintiff urges that the court's comments during the cross-examination of said engineer were erroneous and prejudicial to plaintiff's case because the court thereby placed its protective arm around the witness in the presence of the jury. We do not think that the court's comments, as contended by plaintiff, amounted to informing the jury that he believed the witness or that the jury should do so. Certainly the quoted portion of the court's instructions clarified the matter that the jury was the sole determiner of the facts and of the credibility of witnesses and that it was not to be influenced by any impressions as to the court's view of the testimony or witnesses. No reversible error occurred in this connection.

Affirmed.

T. M. KAVANAGH, C. J., and KELLY, SOURIS, SMITH, O'HARA, and ADAMS, JJ., concurred with DETHMERS, J.

BLACK, J., concurred in result.